FILED
NOV 17 2025
CLERK'S OFFICE
DETROIT

1) UNITED STATES DISTRICT CURT

EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

2) MICHAEL D. JARRUS and LINDA JARROUS, Case No. _____ 4:25-cv-11168____

Plaintiffs, Hon. _____ F. Kay Behm

3) ___Magistrate Hon. Anthony P. Patti_

4) /s/ Michael D. Jarrus

Michael D. Jarrus, Plaintiff (Pro Se)

526 South Alexander Ave.

Royal Oak, MI 48067

Phone: (248) 259-1645

Email: MikeJarrus@gmail.com

5) /s/ Linda Jarrous

Linda Jarrous, Plaintiff (Pro Se)

526 South Alexander Ave.

Royal Oak, MI 48067

Phone: (248) 390-5172

6) v.

7) GRETCHEN WHITMER, in her official capacity as Governor of Michigan;
DANA NESSEL, in her official capacity as Attorney General of Michigan;
ROYAL OAK POLICE DEPARTMENT;
DEPUTY CHIEF PATRICK STANTON, in his individual and official capacities;
DEPUTY CHIEF KEITH SPENCER, in his individual and official capacities;
KAREN BONADEO, Clerk's Office Supervisor, in her individual and official capacities;
KEILA FITZPATRICK, FOIA Coordinator, in her individual and official capacities;
MELISSA HELDRETH, FBI Agent, in her individual capacity;
JASON SLATER, Firearms Services Section Manager, Michigan State Police, in his official capacity;
JOSHUA MARCUM, in his individual and official capacities as Attorney for the City of Royal Oak;
KAREY KIRKPATRICK, FBI CJIS/NICS Agent, in her individual and official capacities;
MICHIGAN STATE POLICE;
"NIC" NICCOLAS GROCHOWSKI and his team, identities to be determined;

8) Andrea Setler, in her official and individual capacities, Federal Bureau of Investigation (FBI), Criminal Justice Information Services (CJIS) Division, NICS Operations
JOHN DOES 1–10,
   Defendants.


PLAINTIFFS' RULE 72(a) OBJECTIONS TO OMNIBUS ORDER (ECF NO. 168,

46 NOV. 7, 2025)

47            1)   Magistrate Patti's Omnibus Order (ECF No.
48 168) improperly imposes a final ban on any further
49 amendments to Plaintiffs' complaint. The Order acknowledges
50 that Plaintiffs have not yet been given a full opportunity to
51 correct, but then declares: "THIS WILL BE PLAINTIFFS'
52 FINAL PLEADING AND NO FURTHER AMENDMENTS
53 SHALL BE ALLOWED." This ruling contradicts Federal Rule
54 of Civil Procedure 15's "liberal policy of permitting
55 amendments" and the Supreme Court's mandate that leave to
56 amend be "freely given when justice so requires." In *Foman v.*
57 *Davis*, the Court held that amendment should be allowed
58 absent evidence of bad faith, undue delay, prejudice, or futility.
59 Here, the Order itself finds Plaintiffs' efforts are in good faith
60 and intended to streamline the case. However, the Order makes
61 no finding of undue prejudice to Defendants, nor does it
62 conclude that further amendment would be futile—both of
63 which are required considerations under *Foman* before
64 denying leave to amend. Consistent with Rule 15, Plaintiffs
65 should be afforded the full statutory opportunity to amend to

66 cure defects (including adding any omitted parties or claims).

67 Indeed, *Krupski v. Costa Crociere*, S.p.A., 560 U.S. 538

68 (2010), makes clear that amendments correcting a misnamed

69 party relate back if the proper defendant "should have known"

70 of the suit. By blanketly forbidding further amendment, the

71 Order risks precluding relation-back amendments (e.g., to

72 correctly name "Nic LNU" or other defendants) and deprives

73 Plaintiffs of a chance to present claims on the merits—contrary

74 to Rule 15 and controlling precedent. Plaintiffs therefore

75 respectfully request that the district judge vacate the directive

76 barring further amendments, so that leave to amend may be

77 granted or denied in the first instance under the usual Rule 15

78 criteria (bad faith, prejudice, futility, etc.) as articulated in

79 *Foman*.

80 2) Here's the revised Paragraph 2, adding a

81 sentence to agree a Third Amended Complaint is necessary

82 due to errors in your Second Amended Complaint (highlighted

83 in bold). It preserves your objection to the final-amendment

84 ban and integrates seamlessly with your Foman argument.2)

85 The Magistrate's Order denies as moot Plaintiffs' existing

4

86  motions to amend, recognizes their Amended Complaint (ECF
87  No. 24) as operative, and sua sponte allows one final
88  amendment by December 8, 2025 (ECF No. 168,
89  PageID.3170). While this opportunity comports with Rule
90  15(a)(2), Plaintiffs agree a Third Amended Complaint is
91  necessary to correct errors identified in their Second Amended
92  Complaint, such as numbering and citation issues, ensuring
93  compliance with Local Rule 15.1. However, the declaration
94  that 'No further attempts shall be allowed' unfairly restricts
95  Plaintiffs' ability to correct their complaint, contrary to Rule
96  15's liberal policy. The Order concedes Plaintiffs' good-faith
97  efforts to streamline the case (PageID.3170) and identifies no
98  prejudice to Defendants, as the case remains in its early stages.
99  Under Foman v. Davis, 371 U.S. 178, 182 (1962), repeated
100 amendments are disfavored only for bad faith or futility,
101 neither of which is present here. Permitting at least one
102 additional amendment beyond December 8 is warranted to
103 prevent dismissal of meritorious claims due to minor defects,
104 consistent with Foman's mandate to avoid technical
105 preclusion. Plaintiffs object to the final-amendment ban and

request its removal.

3) Moreover, barring any future amendment directly conflicts with the Supreme Court's holding in *Krupski v. Costa Crociere, S.p.A.*, 560 U.S. 538, 549 (2010). *Krupski* clarified that relation back under Rule 15(c)(1)(C) hinges not on the plaintiff's delay or mistake, but on whether the added defendant "knew or should have known" that the action would have been brought against them but for that mistake. Once those requirements are satisfied, amendment is not discretionary—it is mandatory. In this case, Plaintiffs' original complaint named a defendant as "Nic LNU," based on available information, with the good-faith intent to later substitute the correct party once identified. The Order's blanket prohibition on any future correction defies *Krupski*'s holding and would unjustly bar relation-back amendments to add such defendants. Notably, the Eleventh Circuit had denied relation back in *Krupski* based on plaintiff's supposed knowledge of the true party, but the Supreme Court reversed, emphasizing that even when a plaintiff knows the party's name, a mistaken belief about identity does not preclude

126  amendment. Similarly, if Plaintiffs here identify additional
127  proper defendants or jurisdictional facts, Rule 15 mandates
128  that they be allowed to amend. While the December 8 window
129  for amendment is itself reasonable, the Order's rigid finality
130  clause is not. It should be modified to allow future motions to
131  amend as appropriate under Rule 15's usual standards.

132      4)    II. Blanket Discovery Stay

133      5)    The Omnibus Order imposes a blanket stay
134  of all discovery until pleadings are finalized, stating 'all
135  discovery is hereby STAYED, pending further notice' (ECF
136  No. 168, PageID.3174), but this indefinite freeze is
137  unsupported by precedent. Under Fed. R. Civ. P. 26(d)(1),
138  discovery typically begins after a Rule 26(f) conference, not
139  after pleadings are finalized. Courts often allow limited
140  discovery on jurisdictional issues, such as verifying 'Nic
141  LNU''s identity or service on federal defendants, which
142  Plaintiffs need to address threshold defenses (Oppenheimer
143  Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)). The Order
144  cites no prejudice to Defendants to justify this sweeping stay

and obstructs Rule 1's directive for a 'just, speedy, and inexpensive determination.' By directing Defendants not to respond to motions unless ordered (PageID.3174), it further delays resolution. Plaintiffs request the Court lift or narrow the stay to allow initial disclosures and targeted discovery (e.g., on jurisdiction or standing), or permit discovery tied to defenses in dismissal motions, to ensure a fair process.

6) III. Denial of Preliminary Injunctions

7) The Order (ECF No. 168 at pp. 10–11) summarily denies Plaintiffs' motions for preliminary and final injunctive relief as "PREMATURE AND MOOT," and directs the Clerk to terminate them without prejudice. Plaintiffs object to this blanket disposition without any merits analysis or application of the four-factor test required under Federal Rule of Civil Procedure 65.

8) Plaintiffs submit this approach is clearly

| 162 | erroneous and contrary to law. Ongoing constitutional |
|---|---|
| 163 | violations—e.g., Second Amendment denials of firearm rights |
| 164 | based on a lapsed marijuana card (Exhibit V-1, Count XI), |
| 165 | First Amendment retaliation for FOIA requests (Exhibit C-12, |
| 166 | Count IV), and Fourteenth Amendment due process violations |
| 167 | (Count II)—require individualized Rule 65 analysis. ECF No. |
| 168 | 14 seeks to enjoin firearm denials, while ECF No. 119 |
| 169 | addresses retaliatory surveillance, both causing irreparable |
| 170 | harm under Elrod v. Burns, 427 U.S. 347, 373 (1976) ('The |
| 171 | loss of First Amendment freedoms, for even minimal periods, |
| 172 | constitutes irreparable injury'). This principle extends to |
| 173 | Second and Fourteenth Amendment deprivations (District of |
| 174 | Columbia v. Heller, 554 U.S. 570 (2008)). The Court cannot |
| 175 | summarily dismiss these motions without assessing likelihood |
| 176 | of success and harm. |
| 177 | 9)    Under Elrod v. Burns, 427 U.S. 347, 373 |
| 178 | (1976), "The loss of First Amendment freedoms, for even |
| 179 | minimal periods of time, unquestionably constitutes |
| 180 | irreparable injury." Although Elrod specifically involved First |
| 181 | Amendment association, the same principle applies broadly to |

182   constitutional rights, including Second and
183   FourteentAmendment deprivations, where civil liberties are
184   infringed through unlawful policies, refusals, or retaliation by
185   government officials. The Supreme Court and Sixth Circuit
186   have consistently held that ongoing constitutional violations—
187   such as denial of equal access to firearm-related rights or
188   suppression of political advocacy—support the issuance of
189   injunctive relief.

190           10)   The Order cites no evidentiary deficiencies
191   in Plaintiffs' filings. It simply dismisses all pending motions
192   for injunctive relief as premature because the final amended
193   complaint has not yet been filed. However, this blanket denial
194   ignores the central purpose of Rule 65, which is to provide
195   temporary relief when Plaintiffs face harm that cannot be
196   undone after final judgment.

197           11)   Additionally, Plaintiffs' motions
198   incorporated factual assertions from contemporaneous notices
199   of binding admissions filed by Defendants in related pleadings,
200   including statements acknowledging destroyed or missing

evidence, procedural inconsistencies, and the impact of state proceedings on federal claims. The Court did not review or address these points and did not identify any specific defect in the motions' factual or legal grounds. (See, e.g., Notices filed at ECF Nos. 70, 81, 86, 139).

12) Plaintiffs respectfully request that the Court modify this portion of the Order to clarify that any renewed motions for injunctive relief will be evaluated under the proper Rule 65 framework. In the alternative, Plaintiffs request that the Court defer ruling on such motions until the amended complaint is filed and the full record may be assessed.

13) IV. Treatment of Plaintiffs' "Notices"

14) Section V of the Omnibus Order (ECF No. 168) categorically rejects all filings labeled as "Notices," stating that none will be considered and that future filings using that label may be stricken. Plaintiffs respectfully object to this blanket approach. Many of the filings identified as "notices"—including ECF Nos. 70, 81, 86, and 139—contain

219  substantive content such as binding admissions by Defendants,
220  jurisdictional statements, evidence of federal involvement in
221  ongoing constitutional violations, and acknowledgments of
222  document destruction. These were not improper "evidence
223  dumps," but good-faith efforts to preserve and alert the Court
224  to critical developments.

225  15) 11 a Plaintiffs, as pro se litigants,
226  labeled these filings as "notices" in part due to uncertainty
227  about the appropriate procedural format. However, the
228  substance of these submissions often tracked the functional
229  elements of a motion to compel, a request for judicial notice,
230  or evidentiary supplementation. The Supreme Court has long
231  held that pro se pleadings "are held to less stringent standards
232  than formal pleadings drafted by lawyers" and must be
233  construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520–21
234  (1972). That principle applies with full force to filings like
235  these, which seek to preserve rights and evidence, especially in
236  civil rights litigation.

237  16) 11 b Automatically disregarding filings

solely because they are labeled "Notice" imposes an unfair and overly rigid procedural penalty. Plaintiffs respectfully request that the Court modify its ruling to clarify that such filings will be evaluated for substance over form. Where a "notice" functionally serves as a motion, supplement, or evidentiary submission, the Court should retain discretion to treat it according rather than striking or ignoring it based on labeling alone. This approach better aligns with both the Federal Rules and the Court's obligation under *Haines* to liberally construe good-faith pro se submissions.

17) V. Rule 11/AI Citation Warnings

18) The Order's section on Artificial Intelligence and Rule 11 also warrants objection. The Court admonishes Plaintiffs for allegedly using AI (ChatGPT) and warns that any "misrepresentation or AI-generated 'phantom' citation will be sanctionable, per violation." Although it is true that attorneys and litigants must verify their filings (Fed. R. Civ. P. 11), the sweeping warnings here are premature and unsupported by any actual misconduct findings. No separate

257 Rule 11 motion was before the Court on the issue; yet the
258 Order adopts a strict liability tone, citing other judges'
259 concerns. Importantly, Rule 11(c) requires a motion by a party
260 and a safe-harbor notice, not sua sponte sanctions warnings by
261 the court. Merely pointing out hypotheticals (as here) exceeds
262 the Court's role. Moreover, the Order effectively discourages
263 Plaintiffs from using generative tools at all. While caution is
264 prudent, a pro se litigant should not be threatened with per-
265 citation fines before any violation. At most, the Court could
266 remind Plaintiffs of Rule 11's requirements. Issuing broad
267 "instructions" that Plaintiffs (and pro se litigants generally)
268 will be sanctioned for any AI error is punitive. Plaintiffs
269 request that the Court delete or soften this advisory language.
270 Any sanctionable misstatement should be addressed only
271 through a proper motion and findings, and not as part of this
272 omnibus ruling. In sum, the warning is unnecessary and
273 outside the normal Rule 11 framework, and the Order should
274 be modified to remove or temper these admonitions.

275      19) VI. Requested Modifications

20) For the foregoing reasons, Plaintiffs respectfully request that the District Court modify Magistrate Judge Patti's Omnibus Order as follows:

21) Amendment of Pleadings: Vacate the provisions barring any further amendments to Plaintiffs' complaint. Permit Plaintiffs to file additional amended complaints as warranted under Fed. R. Civ. P. 15(a), with any denial of leave to amend subject to the usual Foman v. Davis factors (bad faith, prejudice, futility).

22) Discovery: Lift or significantly narrow the stay of discovery. Order that initial disclosures be exchanged and allow targeted discovery (e.g., on jurisdiction or key defenses), rather than an indefinite freeze. If necessary, permit Defendants to refile any dismissed pending motions (e.g., to compel) after the amended complaint is filed.

23) Preliminary Injunctions: Reinstate Plaintiffs' motions for injunctive relief (ECF Nos. 14, 119) for consideration, rather than deeming them moot. At minimum,

allow the district judge to decide whether Plaintiffs have shown a likelihood of success and irreparable harm (citing Elrod, 427 U.S. at 373–74). Alternatively, grant leave to renew or refile these motions after the final complaint is settled.

24) Treatment of "Notices": Rescind the order striking all existing notices and the categorical ban on future notices. Direct that any notice-type filing be reviewed in context: if it contains motions or admissions, treat it as such. For example, if a notice quotes or attaches a defendant's sworn statement, treat it as evidence or a judicial admission rather than ignoring it. This approach comports with Haines v. Kerner's rule that pro se submissions be read liberally.

25) Rule 11/AI Language: Strike or soften the directive threatening sanctions for AI-generated content. Limit any discussion of Rule 11 to a neutral reminder of the rules without sanctions threats. (Any actual misrepresentations can be raised by motion later.) The current language goes beyond merely warning Plaintiffs and may chill their use of assistance tools without justification.

26) WHEREFORE, Plaintiffs respectfully pray that the District Court sustain these objections under Rule 72(a), and modify or set aside the challenged portions of the Magistrate Judge's Omnibus Order (ECF No. 168) as outlined above, in the interests of justice and consistent with governing law.

Repectfully submitted

November 17/2025

/s/ Michael D. Jarrus
Michael D. Jarrus, Plaintiff (Pro Se)
526 South Alexander Ave.
Royal Oak, MI 48067
Phone: (248) 259-1645
Email: MikeJarrus@gmail.com

1)   /s/ Linda Jarrous
Linda Jarrous, Plaintiff (Pro Se)
526 South Alexander Ave.
Royal Oak, MI 48067
Phone: (248) 390-5172